HUGO ECKMAN v. E. D. LUM AND ANOTHER.[1]

December 9, 1932.

No. 29,130.

[1]Reported in 245 N. W. 638.

438

*Cobb, Hoke, Benson, Krause & Faegre* and *Tracy J. Peycke,* for appellants.

*John I. Davis* and *Frank J. Zima,* for respondent.

HILTON, J.

Action to recover damages for personal injuries and damage to property arising out of a collision between the automobiles of plaintiff and defendants. Plaintiff had a verdict. The appeal is from an order denying an alternative motion for judgment notwithstanding the verdict or for a new trial. The only question presented is whether, taking the evidence most favorable to plaintiff, it appears as a matter of law that he was guilty of contributory negligence.

On June 18, 1929, plaintiff, driving a Buick coupé and accompanied by his two nieces, was traveling in an easterly direction on highway No. 10, a graveled road. Defendant E. D. Lum, accompanied by his wife, Edith Lum, was driving a Nash sedan owned by the latter, in a northerly direction on highway No. 25, also a graveled road. Each of the highways was 66 feet in width, the graveled portion being about 25 feet. A collision occurred at the intersection of the highways on the outskirts of the village of Montrose at about 3:30 p. m. The day was bright and clear, and the roads were dry. Of the traffic into and over this intersection 95 per cent was on No. 10. Both highways had certain warning signs thereon; the greater number being on No. 25. On No. 10 there was a junction sign 400 feet from the intersection, two schoolhouse signs, and an intersection sign showing No. 25. On No. 25 there was a junction sign 400 feet from the intersection; at 296 feet from the intersection a sign reading "Junction—U. S. 12 & 10"; at 178 feet a sign reading "Dangerous Crossing" and just below that on the same post a sign "Speed Limit 25 miles"; at 108 feet a sign "Junction U. S. 12 & 10"; also two school signs.

No. 25, from the intersection, sloped south 16.8 feet within a distance of 600 feet. There were banks on each side of No. 25

close to the intersection. At the southwest corner of the intersection a house was located 85 feet south of No. 10 and 45 feet west of No. 25. To the north and east of the house were a number of untrimmed box elder trees and rose bushes, which impeded to some extent the view of anyone coming into the intersection from either the west or the south. It was not a blind corner. At the northwest corner of the intersection and facing southeast was an oil filling station.

Plaintiff, an experienced driver and familiar with the intersection, testified that he was traveling eastward on No. 10 at a speed of about 30 to 35 miles an hour; that when he noticed the sign reading "Junction 400 feet" he slowed down; that when he was about 50 feet from the intersection the speed of his car had been reduced to 15 miles an hour; that he then looked to the right and, although he could see 150 feet down No. 25, he saw no car coming; that he then, after looking to the left and as he proceeded into the intersection, looked again to the right, and for the first time saw defendants' car approaching at a "tremendous speed" from the south about 75 or 100 feet away; that he applied the brakes and turned the car northward. On being asked why he did not proceed across instead of turning to the left, he answered: "I didn't want to get killed. He would have gone through the car." Manifestly an emergency existed.

The collision caused plaintiff's car to spin around to the left and come to a stop about in the middle of No. 10, facing east, just over the east intersection line. The Nash car was tipped over on its right side at the northeast corner of the intersection, with its rear portion on No. 10. Plaintiff was corroborated in most of the essential features by one of his nieces, particularly as to speed of both cars at the time the Buick entered the intersection, the application of the brakes, and the turning to the north.

As a result of the collision the running board on the right side of plaintiff's car was smashed and the door on that side completely torn off its hinges. The other damages were to the forward underneath parts of plaintiff's car, but the front fenders, radiator,

bumper, lights, and hood were not injured. The damage to the defendants' car was to the rear part of the left front fender, the hood, wind shield glass, glass in the left back door, damage to the top, left rear wheel and fender.

Defendants' negligence is conceded. However, a statement should be made of a portion of the evidence for the defense, for it has a distinct bearing upon the question as to plaintiff's contributory negligence.

Defendant E. D. Lum testified that he noticed signs on No. 25 and that his wife read them to him; that he slowed down to about ten miles an hour and, if a stop sign was there, stopped before entering the intersection (it later appeared that there was no stop sign); that as the front wheels of the Nash car crossed the south intersection line, or within a few feet of it, he saw plaintiff's car "fully 150 feet up to the west"; that the next time he saw plaintiff's car it was 15 feet away and on the left-hand side of No. 10; that he (Lum) "drove straight across the intersection without veering our direction at all until the contact or collision"; that plaintiff's car hit the Nash car when it was in the north half of the intersection. Mr. Lum was corroborated by the testimony of his wife relative to the speed with which their car entered the intersection. However, she did not testify that their car stopped before entering it.

Defendants' testimony was strongly contradicted, and the jury was not required to believe it. Ben Simon, an attendant at the gasolene station, standing between two gasolene pumps and facing southeast, where he had a view south on No. 25, testified that he saw the cream-colored car of defendants about 200 or 300 feet down No. 25 approaching at a speed which he estimated at from 30 to 35 miles an hour; that it did not slow down or stop before entering the intersection or before the collision occurred; that from his position between the pumps he could not see west on No. 10 and did not see plaintiff's car until it was in the intersection and starting to turn northward, when it was struck by the Lum car; that defendants' car came in a straight line north; that it could have turned to the right after reaching the intersection, thereby avoiding

the collision. He further testified that Lum asked him if he had seen the accident, and, upon being told that he had, Lum stated to him that he had stopped, to which Simon replied that he had not.

A quite full statement of the facts has been necessary because the cases of DeHaan v. Wolff, 178 Minn. 426, 227 N. W. 350; Chandler v. Buchanan, 173 Minn. 31, 216 N. W. 254; and Sorenson v. Sanderson, 176 Minn. 299, 223 N. W. 145, are relied upon by appellants. A reading of these cases, however, shows that in many essential respects they are readily distinguishable upon the facts therein from the case at bar. It is not necessary here to specify the distinguishing features; they are apparent.

It is only in the clearest of cases, when the facts are undisputed, and it is plain that all reasonable men can draw but one conclusion from them that the question of contributory negligence becomes one of law. 4 Dunnell, Minn. Dig. (2 ed. & Supp.) § 7033, and cases cited. See also § 4167b. Within that rule contributory negligence of plaintiff was not so established. On the entire record, including the physical conditions therein disclosed, the distance that defendants' car must have been from the intersection at the various times involved, and the evidence negativing any violation of law by plaintiff, there was an issue of fact for the determination of the jury as to plaintiff's contributory negligence.

Affirmed.