# MARY A. CHANDLER v. ART BUCHANAN.[1]

November 25, 1927.

No. 26,313.

**Defendant was negligent.**

1. The evidence sustains the finding of the jury that the defendant was negligent.

**Plaintiff was guilty of negligence as matter of law.**

2. It was the duty of plaintiff, in approaching and intending to cross a trunk highway, known to her to carry much traffic, where her view to the right was obstructed until she reached the road limit, to have her car under control so as to be in a position to avoid a collision with approaching vehicles; and, in view of the statutory rule as to right of way at road intersections, known to her, it was her duty to watch out for cars coming from the right and to take proper precaution to avoid a collision with them.

The fact that plaintiff claims to have looked to the right at a time and place when defendant's car must have been there in plain sight and did not see it is not sufficient to overcome the otherwise undisputed showing of failure on her part to exercise ordinary care.

*Held* that plaintiff was guilty of contributory negligence as a matter of law.

Motor Vehicles, 42 C. J. p. 879 n. 76; p. 880 n. 86, 92; p. 960 n. 32; p. 982 n. 72; p. 989 n. 15; p. 1264 n. 77.

See note in 21 A. L. R. 993; 37 A. L. R. 522.

Defendant appealed from an order of the district court for Ramsey county, McNally, J. denying his alternative motion for judgment or a new trial. Reversed.

*Cobb, Wheelwright, Hoke & Benson* and *Ben R. Toensing,* for appellant.

*Kenny & Gardner,* for respondent.

[1] Reported in 216 N. W. 254.

OLSEN, C.

Plaintiff brought this action to recover for damages to her automobile in a collision with an automobile driven by defendant. Plaintiff had a verdict. Defendant moved for a directed verdict at the close of the evidence and thereafter moved for judgment notwithstanding the verdict or, if that was denied, then for a new trial, and appeals from the order of the district court denying such motion.

The motion for judgment notwithstanding the verdict was made on the ground that the evidence wholly failed to make out any negligence on the part of defendant, and on the further ground that the evidence conclusively established contributory negligence on the part of the driver of plaintiff's car. The motion for a new trial was made upon the ground that the verdict is not justified by the evidence.

The assignments of error are that the trial court erred in denying defendant's motion for judgment notwithstanding the verdict on the grounds in said motion stated, and erred in denying the motion for a new trial on the ground of insufficiency of the evidence to sustain the verdict.

The accident happened on August 30, 1926, at the intersection of state highway No. 1 and Fourth street, in the village of White Bear in Ramsey county in this state. Plaintiff's car was being driven by one Dorothy Chandler. The court charged, as to her, that she was the agent of the plaintiff and that if she was negligent then the plaintiff was negligent. For brevity and convenience in considering the question of negligence, the term "plaintiff" will be used as designating the driver of plaintiff's car, for whose acts and omissions plaintiff was responsible.

The situation at this intersection was substantially as follows: Highway No. 1 runs north and south and is 80 feet wide; a center strip 18 feet wide is paved; on each side of the paved strip is a graveled shoulder about six feet wide, making the usable traveled part about 30 feet wide. The highway appears to be approximately level and straight for a considerable distance to the north. Fourth street, also designated as state highway No. 63 at least up to No. 1

from the west, is 60 feet wide; it has a central macadam roadway about 31 feet wide, used for travel; it appears to be level and straight for a considerable distance to the east. Fourth street is a route of travel west to Minneapolis; highway No. 1 goes south to St. Paul and carries materially more traffic than Fourth street. At the northeast corner of this intersection and standing back a few feet from the road limit of each highway are a dwelling house and some trees, which obstruct the view of highway No. 1 to the north for those coming west on Fourth street to the intersection, and likewise obstruct the view of Fourth street to the east for those coming south on highway No. 1 to this intersection, the view of each traveler being so obstructed until he comes within a few feet of the outside road limit. The collision occurred about 11 o'clock in the forenoon on a bright summer day. Plaintiff was familiar with these highways, the traffic thereon, and the situation at the intersection.

1. Upon the question of defendant's negligence, we find no serious difficulty. Without taking up space to point out the testimony, we are satisfied that there was evidence to go to the jury and sufficient to sustain its finding on that issue.

2. Coming then to the only other question in the case, the issue of contributory negligence, we have carefully examined the evidence and cannot escape the conclusion that plaintiff was guilty of contributory negligence. Plaintiff was coming west on Fourth street towards the intersection and intending to keep on straight across highway No. 1. She was traveling on her right-hand side—the north side—of the center of Fourth street, going about 30 miles an hour until she "got to the intersection." She slowed up before reaching, or at the intersection, to about 15 miles an hour. The brakes were good, and at that speed she could have stopped the car in about five feet. There was no other moving traffic at or near the intersection except the two cars here involved and a taxi coming some distance back of plaintiff's car. There was nothing to distract plaintiff's attention. She had good eyesight. She kept on straight across the intersection, and the collision took place when she came to the west edge of the pavement on highway No. 1 and north of

the center of Fourth street. The surface of the streets at the intersection was level and free from obstructions. Defendant, coming from the north on highway No. 1, intended to turn west onto Fourth street at this corner and go on to Minneapolis. He had started to make the turn when the collision occurred. The front parts of the cars came together first and then one or both cars slewed around so that the sides collided. Defendant's car was a Lincoln sedan and somewhat heavier than plaintiff's Moon car. Defendant's car was on the west edge of the pavement on highway No. 1.

Plaintiff testified that when she was at a point marked "L" on the plat introduced by her in evidence she looked to the north up highway No. 1 for a distance of 200 or 300 feet and saw no car coming; that she then looked to the south and saw no car coming from that direction and then proceeded across the intersection, looking ahead to the west; that she did not again look to the north and did not see defendant's car until it struck her car.

The point "L" is located about 40 feet east of the place where the collision occurred; it is past the east road limit of highway No. 1 and past the house on the corner, so that at point "L" the view north up highway No. 1 is clear and unobstructed, and plaintiff so stated.

Plaintiff does, in other parts of her testimony, say that when she looked:

"I was right on to the intersection or almost on to it. You couldn't look before you got to the intersection, there is a house there * * * right on the corner. * * * As you get to the corner you can look. * * * You can see about 200 feet. * * * But as you get on the road you can see, I don't know how many blocks. * * * As I approached I looked past this house; that is as far as I could see past this house, and then as I got on the road I turned and looked the other way. * * *

"Q. Well, how far up there can you see? * * *

"A. You can see about 200 feet. * * *

"Q. I know, but you had plenty of time as you came up to the intersection to size up the situation on the intersection?

"A. Yes."

The highest rate of speed of defendant's car estimated by any witness was 40 miles an hour, and that was at a point a block or more from the intersection. A simple mathematical calculation shows that if defendant's car continued to travel 40 miles an hour and plaintiff's car 15 miles an hour, defendant's car was considerably less than 200 feet from the intersection and in plain sight at the time plaintiff claims to have looked to the north, whether she then looked from the exact point "L" or some feet east of there. Defendant's car was in all probability much closer because he intended to turn at this corner, and his testimony is uncontradicted that he slowed down to 20 miles an hour for the intersection. It is clear that either plaintiff did not look to the north, or else she saw defendant's car and disregarded it. Plaintiff drove heedlessly into this intersection. In the exercise of ordinary care she should have taken some precaution by slowing up, stopping or turning to the right or left, to avoid a collision. A verdict cannot be permitted to rest upon testimony of a party having good eyesight that he did not see a moving automobile then in plain sight at a place to which his vision is specially directed.

In these automobile cases two kinds of negligence are usually presented for consideration; namely, negligence because of violation of some statutory road rule, and negligence on the ground of failure to exercise ordinary care under the common law rule. Violation of a statutory road rule by a party to whom the statute applies is negligence. The failure to exercise ordinary care in a situation where the duty to exercise such care rests upon the party charged with such failure is also negligence. The degree of care required to constitute ordinary care varies with the situation and circumstances in each particular case. In a situation of known or apparent great danger, a high degree of care is required; in a situation of slight or no known or apparent danger, a lesser degree of care is required.

Plaintiff was approaching an intersection with a trunk highway, well known to her and which highway she knew carried much traffic. The danger at such a crossing was obviously greater than at an intersection with an ordinary country road or lane carrying little traffic. Plaintiff was familiar with the statutory rule as to right of way at the intersection. It was her duty to exercise the degree of care which would be used by an ordinarily prudent person, placed in her situation and having her knowledge of the situation and surroundings. While she is not here specifically charged or shown to have violated the right of way rule, yet, knowing that rule, it was clearly her duty, in the exercise of ordinary care, to watch out for cars coming from her right.

This is not a railroad crossing case and is not governed by precisely the same rules, but the reasoning in such cases as Anderson v. G. N. Ry. Co. 147 Minn. 118, 179 N. W. 687, that a person may not heedlessly approach known or obvious danger, nor escape liability by testimony that he looked at a time and place when a train or, as in this case, an automobile, was in plain view and did not see it, is applicable. As said in the case of Baltimore & Ohio R. Co. v. Goodman, —— U. S. ——, 48 S. Ct. 24, 72 L. ed. 22:

"We are dealing with a standard of conduct, and when the standard is clear it should be laid down once for all by the courts."

The case of Rosenau v. Peterson, 147 Minn. 95, 179 N. W. 647, is in point here. Chief Justice Brown, in discussing the fact that the view at the intersection was obstructed, said [at p. 97]:

"She was approaching a dangerous crossing, the view to the north was obstructed, and she was thereby prevented from observing the approach of automobiles or other vehicles from that direction. She was charged with notice that the law gave those approaching from that direction prior right of passing, and it was her duty to have her automobile in such control as to be in position to check it and prevent just such a collision as here occurred. * * * And again the situation of the crossing, the view to the north being wholly obstructed, was such as to require the driver of an automobile, in approaching the same, to have his car under such control and be in

a position to avoid a collision with approaching vehicles, without regard to the question of the statutory priority of right of way."

On the question of contributory negligence here, there is no material conflict in the evidence. Plaintiff has had her day in court and the facts have been fully presented. Upon the evidence so presented the plaintiff was guilty of contributory negligence as a matter of law, and the order appealed from is reversed and judgment directed to be entered in favor of defendant.

Reversed.

WILSON, C. J. (dissenting in part).

I dissent to that part of the opinion that holds plaintiff guilty of contributory negligence as a matter of law; not to the rules of law stated, but to the facts upon which their application must rest.

An analysis of plaintiff's conflicting testimony as to the place from which she looked to the north and the permissible inferences therefrom convince, me that as a matter of fact she looked from a point east of where "L" was put upon the map with her approval. If so, the jury was at liberty to find her free from contributory negligence. It is our duty to give plaintiff the benefit of the evidence most favorable to her, but I think this opinion disregards her favorable testimony and holds her by reason of the location of "L" which was a mere estimate and clearly resulted in the facts being "mixed up." Holding her so rigidly by the location of "L", upon the record before us, smacks of the technicality of ancient legal procedure. This court has consistently held that it is only in the clearest of cases when the facts are undisputed and it is plain that all reasonable men can draw but one conclusion from them that the question of contributory negligence becomes one of law.

Although Rimmer v. Cohen, 172 Minn. 134, 215 N. W. 198, involves a pedestrian, many of the statements therein made are applicable to this case. See also Bradley v. Minneapolis St. Ry. Co. 161 Minn. 322, 201 N. W. 606, 46 A. L. R. 993.

HOLT, J. (dissenting in part).

I am inclined to agree with the above dissent.