## JANET JOHNSTON v. A. C. JORDAN AND ANOTHER.[1]

January 18, 1935.

No. 30,207.

*Cobb, Hoke, Benson, Krause & Faegre, Bradshaw Mintener,* and *Frank Janes,* for appellants.

*Ossanna, Hall & Hoaglund* and *Charles E. Carlson,* for respondent.

HOLT, JUSTICE.

Defendants appeal from the order denying their motion in the alternative for judgment notwithstanding the verdict or a new trial.

Plaintiff recovered a verdict against defendants for personal injuries received in a collision of the automobile she was driving and a delivery truck driven by defendant Armstrong as the servant of defendant Jordan. There are three assignments of error, *viz.:*

[1] Reported in 258 N. W. 433.

(a) That the court erred in denying defendants' motion for judgment notwithstanding the verdict; (b) that the court erred in denying the motion for a new trial made on the ground that the verdict was contrary to the evidence; and (c) that the court erred in denying the motion for a new trial made upon the ground of excessive damages appearing to have been awarded under the influence of passion and prejudice.

The first two assignments cover the same proposition, namely, that as a matter of law plaintiff is not entitled to a verdict or judgment, but that defendants are. That would be the case if the evidence fails to establish actionable negligence on the part of defendant Armstrong which proximately caused injuries to plaintiff, or if the evidence shows that plaintiff's negligence caused or contributed to cause such injuries. Plaintiff was driving a Chevrolet sedan west on Twenty-eighth street in Minneapolis approaching Grand avenue as Armstrong, a servant of defendant Jordan, was driving a Ford delivery truck north on Grand avenue approaching Twenty-eighth street. The time was shortly after three p. m. on July 5, 1932. The streets were dry. Although traffic on Twenty-eighth street is largely controlled by semaphores and stop signs at many of the intersecting avenues, giving the impression that Twenty-eighth street is a through street, there are no stop signs on Grand avenue either on the north or south side of Twenty-eighth street. There was a conflict in the evidence as to which car was first in the intersection; also as to the speed each car maintained in approaching and in traversing the intersection. If plaintiff entered the intersection before Armstrong did, she had the right of way. The northeast corner was vacant. The other corners had buildings, set back a short distance from the building line. The building on the southeast corner was a store with an awning. There were also large elm trees on the east boulevard of Grand avenue south of Twenty-eighth street. There was evidence justifying the jury in finding that plaintiff approached the intersection at a speed of from 15 to 20 miles an hour, looked to her left down Grand avenue when about 25 feet from the intersection, and ascertained that no vehicle was coming from the south on Grand avenue

within a distance of from 50 to 60 feet of the intersection. She continued into the intersection, looking to the right to ascertain whether any southbound traffic on Grand avenue imperiled her progress, and when, as about half of the intersection was passed, the Ford truck swung in front of her at a speed of more than 40 miles an hour, she instantly applied her brakes, the front right corner of the sedan came in contact with the rear right-hand corner of the truck and became attached thereto until the front left wheel of the sedan struck the curb at the northwest corner, when it became detached, the truck proceeding 30 or 40 feet further in a northeasterly direction and tipping over. The evidence also justified the jury in concluding that the Ford truck approached the intersection at a speed of 35 to 40 miles an hour and increased the speed in crossing. From the plaintiff's witnesses it could also be found that the Ford in crossing swung over to the left of the center of Grand avenue, and that the collision occurred in the northwest quarter of the intersection. Upon facts so accepted by the jury, the conclusion that defendants' negligence was the proximate cause of the collision and the resultant injuries to plaintiff must be sustained. The same findings of fact refute the defense of plaintiff's contributory negligence.

Plaintiff's estimate of the distance from the intersection at which she looked to her left and of the distance she then could observe oncoming traffic from the south on Grand avenue was for the jury. When one is riding in a moving vehicle, estimates of distances in feet, yards, or rods are of course not accurate. It was enough if she looked to her left at such a distance from the intersection that she could ascertain that no traffic coming from the south on Grand avenue was near enough to interfere with her crossing the intersection safely, at the speed at which she was going. Defendants rely on Chandler v. Buchanan, 173 Minn. 31, 216 N. W. 254, a case that affords defendants stronger support than any other in this court. The decision was by a divided court. But there is this distinction. The driver of the car in the Chandler case knew that she was crossing a through street, and she placed herself in a position when she looked to the right where, according to her own story,

she had a clear view of over 200 feet and did not see the car approaching, although it was then within that distance. In the instant case plaintiff was not attempting to cross an intersecting through street; she did not say that where she looked she could see south on Grand avenue 200 feet; her statement was that she could see south 50 or 60 feet beyond the intersection. Her view was not clear. There were awning, trees, and poles obstructing the vision. The facts in Sorenson v. Sanderson, 176 Minn. 299, 223 N. W. 145, we regard as not at all similar to those the jury could find true in the case at bar. DeHaan v. Wolff, 178 Minn. 426, 227 N. W. 350, also cited by defendants, was a case where the plaintiff was crossing a street more used than the one he was traveling, without discovering that the car with which he collided was approaching the intersection. He had an unobstructed view to his right, from whence the other car was coming, for quite a distance before arriving at the intersection. Still, heedless of its presence, he entered and traversed the intersection without slacking speed or doing a thing to avoid the collision. We think that here the evidence is such that the trial court was required to submit the issues of negligence and contributory negligence to the jury, and therefore defendants are not entitled to judgment *non obstante* nor to a new trial on the ground that the verdict is contrary to the evidence.

The more perplexing question is the claim that the verdict is excessive, appearing to be awarded under the influence of passion and prejudice. The verdict was for $5,000. There is nothing in the record that suggests any possibility that the jury rendered the verdict under the influence of passion or prejudice. The trial was free from that acrimony so often injected by overzealous attorneys. There was nothing in the case that would incite the jury against defendant Jordan, who had no part in causing the collision. The fact that Armstrong was injured ought to have created sympathy for him rather than resentment. It is true that if the opinions of the eminent doctors who testified in behalf of defendants had been accepted by the jury, then plaintiff's injuries were of a minor character, from which she has fully recovered so that now no objective symptoms of their existence are discoverable. But, on the other

hand, doctors of high professional attainments, testifying for plaintiff, find objective evidence of a permanent sacroiliac sprain due to the injury. They also attribute her highly nervous condition to the result of the accident. Plaintiff claimed that before the accident she was in good health, doing her own housework, but that since she is subject to severe pains, is nervous, cannot sleep well, and is unable to do her housework. The trial occurred about one year and a half after the accident, so that enough time passed to bring about a complete recovery if such were possible, and, if not, to determine with some assurance of certainty that permanent injuries resulted. If the latter, it cannot be said that the verdict is excessive. Plaintiff is now 35 years old. Five thousand dollars cannot be considered an excessive award for her having to go through the rest of life in pain and unable to perform her accustomed labors. In Unmacht v. Whitney, 146 Minn. 327, 178 N. W. 886, 887, there was a verdict for $5,500 sustained for injuries received by a woman when run down and dragged by an automobile. The injuries which survived the healing period were largely to her nervous system. The court said [146 Minn. 331]:

"It is urged that the disordered state of her nervous system will disappear as soon as this lawsuit is finally determined, and that her present condition is largely due to the effects of her imagination. She was under the observation of the jury and trial judge. They were in a better position than we are to determine whether such are the facts. We must decline to interfere with the verdict as one which is so excessive as to be attributable only to passion and prejudice."

So in the instant case, the learned and experienced trial judge considered it his duty not to interfere with the amount of the verdict, and we see no good reason for disturbing it.

The order is affirmed.

LORING, JUSTICE (dissenting).

In my opinion plaintiff was negligent as a matter of law, and her negligence contributed to her injury. She approached Grand avenue at a speed of 15 to 20 miles per hour; her view to the right

for nearly a block was unobstructed so that she might at a glance see that no traffic from that direction menaced her safety or might claim right of way. It was a bright, clear day, and the hour was one in which traffic was light. There were no parked or moving cars to distract her attention. She knew that the Grand avenue intersection was dangerous, and she says she looked to her left as she was about 25 feet from the eastern curb of the avenue. The city engineer's plat shows conclusively that at that point she could see past the grocery store and 260 feet south on the avenue. The photographs show that there was no obstruction to her vision except a telephone pole near the intersection and a tree with high branches some 60 feet farther on. Neither one of these objects in any way could have concealed defendants' car. The highest estimate of its speed was 40 miles per hour. Even at a possible 45 or 50 miles an hour it must have been in plain sight when she was at the point where she said she looked or anywhere near that point. Either she did not look or she ignored the presence of the car She says she did not see it. She then glanced to the right and then back to the front without again looking toward her left. Then when she was within ten feet of defendants' car she heard it, "looked up," and saw it in her path. She veered somewhat to the left but struck defendants' car in the rear of its right rear wheel. Having claimed to look but not having seen defendants' car, which was plainly visible, she is in the same position from a legal standpoint that she would be in if she had not looked at all. As said in Chandler v. Buchanan, 173 Minn. 31, 35, 216 N. W. 254, 255:

"A verdict cannot be permitted to rest upon testimony of a party having good eyesight that he did not see a moving automobile then in plain sight at a place to which his vision is specially directed."

That is just what the majority opinion permits.

If it may be ordinary care to drive into such an intersection without ever looking to the left for approaching traffic, then this verdict may rightfully stand, but not otherwise. If ordinary care permits such conduct, the doctrine of contributory negligence has

been judicially abolished. If ordinary care requires a look to the left under such circumstances, she either failed to look or ignored a plainly visible object. She is not in the position of a person who has seen the approaching car and advances on the assumption that its driver will moderate his speed and yield the right of way. She did not see a plainly visible vehicle approaching at high speed, and she voluntarily entered the danger zone of the intersection [176 Minn. 302] "unmindful of and oblivious to the impending peril" and exposed herself to the hazard of a collision. Sorenson v. Sanderson, 176 Minn. 299, 223 N. W. 145, is directly in point, even to the plaintiff having the right of way. In that case the plaintiff was the first into the intersection, making a left turn after giving the required signal. This gave him the statutory right of way. As in the case at bar, the paths of the two cars crossed. Plaintiff in each case had the statutory right of way. In each case plaintiff continued on into the intersection of the paths, and a collision occurred as was to be expected if neither car reduced speed. In each case the plaintiff claimed to have looked and not to have seen what was obviously visible and continued to act as if the perfectly visible object, which it was his duty to see, was not there. The cases are parallel in principle and cannot be distinguished by the mere fact that the cars were crossing each other's paths at a different angle in the Sorenson case from that in the case at bar. This court unanimously held that plaintiff in the Sorenson case was negligent.

The majority give some weight to the fact that at some other intersections Twenty-eighth street is protected by stop signs. It was not so protected at Grand avenue. Even if it were so protected, plaintiff could not in the exercise of ordinary care blindly enter the intersection without looking for cross traffic. Contrary to the view apparently held by many of the young drivers of the cities, cars do not enter such intersections from cross streets at their peril. Having stopped for the sign, their legal rights (usually ignored) are the same as at other intersections. Johnston v. Selfe, 190 Minn. 269, 251 N. W. 525; Bell v. Pickett, 178 Minn. 540, 227 N. W. 854, 855. In the case last cited this court in speaking of cross traffic entering a protected street, said [178 Minn. 544]:

"If he does stop and thereafter exercises due care in entering the through street, he then has the benefit of the right of way rule."

Of course the *prima facie* presumption of unlawful speed would be more easily overcome in favor of the arterial traffic at such intersections, but the arterial traffic must proceed with due regard to the rights of cross traffic to enter or cross after having complied with the stop sign. One may not, in ordinary care, even if on the arterial street, blindly and without looking, go blundering into such intersection. In the same case the trial court charged, with this court's approval, as follows [178 Minn. 543]:

"2. The law of the road is not unyielding. It does not invariably give the vehicle to the right of the intersection the preference. Regard must be had to surrounding circumstances, and in connection with state and municipal traffic regulations the drivers of vehicles upon the public streets always must be mindful of the abiding rule requiring the exercise of due care to avoid collision.

"3. The statute does not warrant drivers in taking close chances. If the driver of an automobile approaching a street intersection sees a vehicle approaching at a fast rate of speed so that there is reasonable danger of a collision, if both proceed, then it is his duty to exercise due care so as to avoid a collision."

But I am not in accord with the view that because some other intersections on Twenty-eighth street were protected by stop signs the conduct of plaintiff in not looking is in any measure excused. Here the photographs show that the stop sign was conspicuously absent. A stop sign present, she might, until observation otherwise indicated, assume that cross traffic would stop for it, but the presence of stop signs at other intersections places no burden upon public authorities to place them at every intersection. Not only the law but common observation demonstrates that such is the case. In my opinion Twenty-eighth street ceases to be "arterial" when not protected, though I do not think that point important here.

Stone and Julius J. Olson, Justices (dissenting).

We agree with the views expressed by Mr. Justice Loring.