# WENZEL KRAUS v. C. A. SAFFERT.[1]

July 12, 1940.

No. 32,465.

*Sexton, Mordaunt, Kennedy & Carroll,* for appellant.
*Streissguth & Gislason,* for respondent.

[1]Reported in 293 N. W. 253.

PETERSON, JUSTICE.

Plaintiff and defendant had an automobile collision in an intersection in New Ulm on June 22, 1939, between 5:00 and 5:30 p.m. It was daylight and clear. Plaintiff was driving a 1928 Chevrolet coupé southerly on Franklin street on his way home from work, and defendant, who is a physician and surgeon, was driving a 1936 DeSoto sedan westerly on Fifth street to make a call at a hospital en route home.

Plaintiff testified that he was going from 15 to 20 miles per hour; that he slowed down at an alley a half block north of Fifth street; that when he was a distance estimated to be something like 10, 15, or 20 feet north of Fifth street he looked to his left for approaching vehicles; that his view was across the corner of a lot on the opposite corner on which there was a house and some shrubbery; that he could see down Fifth street to the alley, which is about 165 feet east of Franklin street; that he saw no vehicles approaching; that he then looked to his right for vehicles, meanwhile travelling forward; and that he then, without looking to the left again, proceeded into the intersection on his way across Fifth street. Each driver was on his right side of the street.

The cars collided at a point about 20 or 25 feet south of the north curb line of Fifth street and 27 feet west of the east curb line of Franklin street. Plaintiff was thrown out of his car, and the two cars came to rest at a point about 62 feet from the place of impact to defendant's left and west on Fifth street.

Defendant testified that he stopped on Fifth street two blocks east of Franklin street for a stop sign; that he proceeded westerly on Fifth street; that he had the sun in his eyes; that his windshield had some dust on it; that he was going about 25 to 30 miles per hour; that just before he reached the intersection he saw plaintiff as plaintiff was about to enter the same; that he then slackened his speed

to less than 20 miles per hour, but was unable to avoid the collision.

The surface of Fifth street was black-top; that of Franklin street was gravel. Neither was a through street, and there were no stop signs at the corner.

Defendant's car struck plaintiff's coupé with such tremendous impact· as to make indentations of its headlights on the left side of the coupé's body, and this after defendant had applied his brakes and skidded so as to leave skid marks on the street approximately 30 feet long. Plaintiff estimates that from the point where he looked easterly to his left he drove about 52.5 feet and the defendant drove in excess of 171 feet before the collision.

A witness for defendant who was called to contradict plaintiff's testimony that he slowed down at the alley testified that she was on the porch of a house at the northwest corner of Fifth and Franklin streets; that plaintiff drove along at about 20 miles per hour without slowing down for the alley; that she looked down Fifth street with a view over the shrubs in the yard across the street; that she could see two blocks down the street; that she did not see defendant or any other traffic; that she watched plaintiff go into the intersection; and that suddenly defendant crashed into him. If she looked to the east on Fifth street after she observed that plaintiff did not slow down for the alley, defendant went two blocks while plaintiff went approximately one-half a block before the collision. According to plaintiff's version, defendant traversed a distance immediately before the collision three times as great as that of plaintiff, and according to that of defendant's witness the distance was four times as great. In terms of speed, defendant was going three or four times as fast as plaintiff at and just prior to the collision.

Plaintiff was 40 years old at the time of the collision. He sustained very severe injuries to the head, back, and body. He was taken to a hospital. He was disabled and had severe

pain and headaches. He consulted and was treated by a specialist who testified that there was definite organic injury to the brain, that he had sluggish mental reactions, trouble in sleeping, headaches, and dizziness. This condition he said would continue for an indefinite period. It was necessary to puncture his spine twice to relieve spinal pressure. His back bothered him. He was laid up for three months. He earned $24 per week as a laborer. When he returned to work his foreman did not put him at hard work at which he was formerly employed, but favored him with light work. Special damages aside from loss of wages were in excess of $250.

The defenses were absence of negligence on the part of defendant and contributory negligence on the part of plaintiff. Plaintiff had a verdict in the sum of $3,800, which the trial court reduced to $3,000. Defendant appeals from an order denying his motion in the alternative for judgment notwithstanding the verdict or a new trial.

On the appeal defendant urges (1) that contributory negligence on the part of plaintiff appears as a matter of law, and (2) that excessive damages were granted under the influence of passion and prejudice.

■ The charge of contributory negligence here is that "plaintiff looked and failed to see a car [defendant's] that was actually present and within his range of vision." The contention involves an assumption that the evidence establishes as a matter of law the facts on which it is based. This the evidence fails to do. The location and speed of defendant's car as well as its visibility at the time plaintiff looked before entering the intersection were fact questions. The evidence supports the view that when plaintiff made his observation preparatory to crossing the intersection defendant was over 170 feet east on Fifth street and not within the range of plaintiff's vision; that it then appeared safe for plaintiff to cross the intersection; and that defendant rendered the crossing unsafe by travelling at such unanticipated excessive speed from a point where plaintiff could not

see him by a reasonable observation as to reach the intersection before plaintiff had got across, and thereby caused the collision.

Contributory negligence in this connection is the failure to exercise reasonable care in watching for other automobiles and such caution as is commensurate with reasonable prudence. If defendant was 170 feet or more when plaintiff was 15 or 20 feet from the intersection, it was a question of fact whether, under the circumstances, making the crossing appeared safe to plaintiff. Plaintiff is not to be held guilty of contributory negligence in not seeing defendant, who was out of sight when a reasonable observation was made and whose unanticipated and excessive speed made unsafe a crossing that appeared to be safe. Dahl v. Collette, 206 Minn. 604, 289 N. W. 522. In cases where the plaintiff saw the defendant's car approaching and it appeared safe to cross an intersection across the path of the approaching car, the questions of negligence and contributory negligence have been held to be fact issues. Timmerman v. March, 199 Minn. 376, 271 N. W. 697; Pearson v. Norell, 198 Minn. 303, 269 N. W. 643; Montague v. Loose-Wiles Biscuit Co. 194 Minn. 546, 261 N. W. 188; Johnston v. Jordan, 193 Minn. 298, 258 N. W. 433. Defendant relies on Chandler v. Buchanan, 173 Minn. 31, 216 N. W. 254; Sorenson v. Sanderson, 176 Minn. 299, 223 N. W. 145; DeHaan v. Wolff, 178 Minn. 426, 227 N. W. 350, and similar cases. In Dahl v. Collette, 206 Minn. 604, 607, 289 N. W. 522, following Guthrie v. Brown, 192 Minn. 434, 256 N. W. 898, we pointed out that the cited cases involved situations where the plaintiff drove heedlessly into an intersection and did not see the defendant's car then in plain view and practically at the intersection. Of course a party having good eyesight will not be heard to say that he looked at an approaching automobile in plain sight and that he did not see it when the physical facts demonstrate either that he did not look or that, if he did, he proceeded in reckless disregard of the danger of collision. This is not such a

case. The evidence presented fact questions as to whether defendant's car was in plain sight when plaintiff looked and whether it appeared safe for plaintiff to cross.

Defendant insists that plaintiff was guilty of contributory negligence for the reason, others aside, that plaintiff did not look again. Just when or where plaintiff should have made additional observations is not pointed out. The standard of duty is the exercise of due care. There is no rule of law requiring a driver of a car to look a second time after he has determined by reasonable observation that it is safe to cross an intersection. Due care is not determined by the number of times the driver looked, nor by how often, or when, or from where. Norling v. Stempf, 208 Minn. 143, 293 N. W. 250; Rimmer v. Cohen, 172 Minn. 134, 215 N. W. 198. See Reier v. Hart, 202 Minn. 154, 277 N. W. 405 (a pedestrian crossing an intersection). Furthermore, plaintiff had the right of way and had a right to assume that this right would be respected until he had reason to believe otherwise. Pearson v. Norell, 198 Minn. 303, 269 N. W. 643.

■ The damages awarded as reduced by the trial court were not excessive and granted under the influence of passion and prejudice. True, the verdict was large, but that in itself does not show passion and prejudice. The injuries were severe. The testimony was that plaintiff had not fully recovered and that his head and brain injuries would continue indefinitely but that he would gradually get well. Organic injury to the brain with sluggishness of mental function is serious. Hospitalization of plaintiff was necessary. The pain and suffering were great and of long duration. The special damages other than loss of wages exceeded $250, and loss of wages was $288. Plaintiff was fortunate in being permitted to return to his work before his complete recovery and do such work as he was able to perform. The jury undoubtedly took this into consideration in making allowance for loss of wages and perhaps earning power. Defendant urges that liability was doubtful because of claimed contributory neg-

ligence on the part of plaintiff. But the verdict in favor of plaintiff settles for all purposes the question of contributory negligence. Whether the issue was close or otherwise is not important. Reduction of the verdict as a separate matter is out of the case for failure to assign error on it below in the motion for new trial and here in the assignments of error.

Affirmed.