# RICHARD WILMES v. FELIX J. MIHELICH.
# JOHN WILMES v. SAME.[1]

January 4, 1947.

No. 34,241.

---

[1]Reported in 25 N. W. (2d) 833.

140

*Fred J. Hughes,* for appellants.
*Quigley, Donohue & Quigley,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Two actions for damages arising out of an accident which occurred in St. Cloud on September 25, 1945, at about 5:45 p. m. At that time, the minor plaintiff, Richard Wilmes, while driving his motorcycle south on Ninth avenue north, came into collision with defendant's automobile, then being driven east by defendant on Fifteenth street, at the intersection formed by said highways. At the close of the testimony the trial court granted defendant's motion for a directed verdict in each case. From an order denying plaintiffs' motion for a new trial, these appeals are taken. John Wilmes, the father of Richard, also sues on his own behalf, but hereinafter in this opinion we shall refer to Richard as the plaintiff.

Ninth avenue north in St. Cloud is a fully dedicated asphalt highway and a main thoroughfare which runs north and south. Fifteenth street, extending east and west, is a gravel road which intersects Ninth avenue north. It is fully dedicated, graded, and maintained east of Ninth avenue north, but to the west thereof only the south half has been dedicated, and this half has not been maintained. The territory north and west of the intersection is not built up but is comprised of uncultivated acreage.

At the time of the accident the permissive speed in this district was 30 miles per hour. Plaintiff, then 19 years of age, was traveling at a speed which he estimates was not greater than 25 miles per

hour. Accompanying him and sitting on the extra seat of his motorcycle was a friend, Florence Hockert.

The testimony of plaintiff and his guest as to the accident was as follows:

By plaintiff:

"We were going down and we seen the car come out and I put on my brakes and that is all I remember right there, because when I hit the car I was knocked out.

\* \* \* \* \*

"Q. But you do know, Richard, that as soon as you saw the car you applied your brakes?

"A. That is right, I would not say just as soon as I saw it because I could not tell you when I saw it.

"Q. You don't know when you saw it?

"A. No.

"Q. So that you can't say that you applied your brakes as soon as you saw it?

"A. No, I can't say I applied my brakes as soon as I saw it.

"Q. You don't know when you saw it?

"A. That is right.

"Q. And you don't know when you applied your brakes?

"A. That is right.

"Q. And you don't know where you applied your brakes?

"A. That is right."

By Florence Hockert:

"I know we saw a car, but just where it was I could not tell, but I know we hit the car, I remember hitting the car and going out to the ground.

"Q. Where it was when you first saw it, are you prepared to say that?

"A. No, I would not know how far the car was up to the road or anything like that.

"Q. Did you get a good enough view of it so that you can estimate its speed at all?

\* \* \* \* \*

"A. No, I really don't know how fast the car was going."

The evidence further disclosed that prior to the accident skid marks from the motorcycle indicating where its brakes were applied went back at least 53 feet from the point of contact with defendant's car.

Photographs submitted in evidence, as well as the undisputed testimony of all witnesses, established that only the extreme left rear portion of defendant's car was still in the right lane of Ninth avenue north at the time of the collision and that plaintiff's motorcycle ran into and collided with the left rear fender of defendant's automobile. Plat measurements indicate that there was a highway clearance of some seven feet to the rear of defendant's automobile, amply sufficient for the passage of plaintiff's motorcycle at the time of the collision.

Defendant testified that as he approached Ninth avenue north his speed was from 15 to 20 miles per hour; that when five or ten feet west of the intersection he slowed down almost to a complete stop; that he shifted into second, looked, did not see anything coming, and then proceeded across the intersection at from five to ten miles per hour; that a bank to his left and weeds along the highway obstructed his view to the left, and for this reason he went very slowly across the intersection; that he first saw the motorcycle when it slid into the rear left fender of his car, which was then slightly beyond the center of the intersection; that at the point where he slowed his car almost to a stop he could see up the road to a point estimated by the city engineer to be some 660 feet north of the intersection, but he did not see plaintiff's motorcycle within that distance; that after the accident his car had completely crossed over Ninth avenue north and was facing in a northeasterly direction. According to the testimony of a police officer, the motorcycle came to rest on the east side of Ninth avenue north at the edge of the pavement.

Plaintiff contends that defendant's negligence is established by three factors: (1) That plaintiff entered the intersection first and therefore defendant should have yielded him the right of way;

(2) that defendant failed to maintain a proper lookout; and (3) that defendant was traveling at an excessive speed. It is also plaintiff's contention that the evidence failed to show any negligence on his part.

■ The record is devoid of any evidence which would sustain a finding that plaintiff was the first to enter the intersection. The position of the vehicles after the accident, the marks upon defendant's car showing the point of contact at its left rear fender when the rear of the car was slightly beyond the center of the intersection, and the testimony of all witnesses, including plaintiff, establish beyond question that defendant had entered the intersection substantially before plaintiff, and hence was entitled to the right of way. Plaintiff's testimony that "we were going down and we seen the car come out and I put on my brakes" (his skid marks indicating that this was when he was at least 53 feet back from the point of contact) is in itself conclusive that defendant had entered the intersection at a time when plaintiff was still a substantial distance north thereof.

Minn. St. 1945, § 169.20, subd. 1, provides:

"The driver of a vehicle approaching an intersection shall yield the right of way to a vehicle which has entered the intersection from a different highway.

"When two vehicles enter an intersection from different highways at approximately the same time the driver of the vehicle on the left shall yield the right of way to the vehicle on the right."

The rule is well established that under the foregoing statutory provisions the driver of a motor vehicle in crossing a highway intersection is required to yield the right of way to a vehicle approaching from his right where both are so close to the intersection that there is danger of collision if both proceed. See, Gibbs v. Almstrom, 145 Minn. 35, 176 N. W. 173, 11 A. L. R. 227; Pearson v. Norell, 198 Minn. 303, 269 N. W. 643. Even where, as in the instant case, the intersection is formed by two highways, one of which is paved and well-traveled and the other only partially maintained and lightly

used, we find no authority to support a rule requiring the driver of a vehicle on the lightly used thoroughfare approaching the intersection from the right to yield his right of way to a vehicle on his left using the paved highway, provided the former reaches and enters the intersection at the same time or ahead of the vehicle on the left. Such a construction would nullify the effect of the right-of-way statute and eliminate almost completely the standard of conduct at intersections prescribed thereby and designed to prevent accidents.

It is true, we have held that the driver of a car approaching from the right must yield the right of way to a driver on the left when the latter is actually in possession of the intersection. Montague v. Loose-Wiles Biscuit Co. 194 Minn. 546, 261 N. W. 188; Duffey v. Curtis, 193 Minn. 358, 258 N. W. 744; Nye v. Bach, 196 Minn. 330, 265 N. W. 300. Such rule is not applicable here, where plaintiff's testimony and that of his principal witness, as well as the testimony of defendant and the physical facts and exhibits all clearly indicate that defendant, approaching the intersection from the right, was well within the same and had possession thereof, with the attendant right of way, at a time when plaintiff was still some 53 feet back and to the left of defendant. Under such circumstances, it is clear that plaintiff's failure to accord defendant his statutory right of way constituted contributory negligence as a matter of law on the part of plaintiff.

Plaintiff asserts, however, that, notwithstanding defendant's statutory right of way at the intersection, his failure to observe the ordinary rules of care requisite under the circumstances forfeited whatever rights he had therein, or at least made this issue one for the jury. Thus, plaintiff asserts, defendant's failure to look, or, upon looking, to observe plaintiff, as well as his actions in crossing the intersection at an excessive rate of speed, constituted evidence of such a lack of due care that a jury might have determined it sufficient to result in forfeiture of defendant's right of way.

It is true, this court has held that the right-of-way statute (§ 169.20, subd. 1) does not prescribe the full measure of duty im-

posed upon drivers at intersections, and that the common-law duty to exercise due care is not nullified thereby. Cohen v. Silverman, 153 Minn. 391, 190 N. W. 795; Hinkel v. Stemper, 148 Minn. 77, 180 N. W. 918. We have held that the driver of an automobile approaching and entering an intersection where the view is obstructed must exercise a degree of care commensurate with the extra hazards created by such an obstruction. Draxton v. Katzmarek, 203 Minn. 161, 280 N. W. 288.

However sound these rules may be, the record fails to disclose any evidence under which defendant might be found guilty of failing to observe them or under which plaintiff could be held relieved of the penalties following his own negligence at the time of the accident. Certainly there is nothing in the testimony given by plaintiff to establish that defendant had failed to exercise due care. His statement that "we were going down and we seen the car come out and I put on my brakes" not only fails to show negligence on the part of defendant, but clearly indicates that he was in the intersection and had the right of way when plaintiff was still some distance back therefrom.

Defendant's testimony that he was accustomed to using this highway; that his view was obstructed by the embankment and by weeds; that for this reason he slowed down almost to a stop before proceeding across it; and that he traveled across the intersection at a speed of from five to ten miles per hour in a district zoned for a speed of 30 miles per hour would hardly sustain a finding of negligence. The fact that his vision was obstructed because of the embankment and weeds would not require him to remain there indefinitely, nor relieve him of the obligation of also looking to his right, where oncoming vehicles might have the right of way across the intersection. Nor would his failure in this respect relieve plaintiff of his common-law duty to exercise due care and his statutory obligation to yield the right of way to defendant after the latter had first entered the intersection.

■ Likewise, defendant's speed in crossing the intersection, even accepting plaintiff's version thereof, does not indicate such negli-

gence on defendant's part as would result in the forfeiture of his right of way or relieve plaintiff from his negligence in failing to observe the statutory and common-law obligations imposed upon him. Plaintiff's contention is that the record would sustain a finding that defendant passed over the intersection at 20 miles per hour. He supports this by citing the following testimony of a police officer who arrived at the accident shortly after it occurred:

"Q. Mr. Mueller, do you remember Mr. Mihelich saying he was going 15 miles an hour before the accident and at the point of impact?

"A. I don't remember if it was 15 or 20.

"Q. 15 or 20?

"A. Yes, in there, I don't know exactly, I don't remember, I haven't seen the report, I would not know offhand."

The question propounded to the officer was double in form, and his response may have referred to defendant's statement that he had been traveling 15 to 20 miles per hour up to the time he slowed down for the intersection. This district is zoned for 30 miles per hour. Plaintiff admits that his speed was 25 miles per hour. Under these circumstances, it is difficult to see how the speed of defendant could have been the sole proximate cause of the accident or how it could have relieved plaintiff of his negligence in failing to yield to defendant the right of way which he so clearly possessed at the time of the collision. As this court stated in Draxton v. Katzmarek, 203 Minn. 161, 164, 280 N. W. 288, 289, *supra:*

"* * * The evidence justifies a finding of obstructed view because of the height of the snowbanks. Assuming that the speed was *prima facie* evidence of negligence under the statute, in order to be a basis for recovery it must have been a proximate cause of the injury. Provinsal v. Peterson, 141 Minn. 122, 169 N. W. 481; Markgraf v. McMillan, 197 Minn. 571, 267 N. W. 515; 5 Am. Jur. p. 596, § 164. * * * It has been held that speed is not a proximate cause of an accident where the plaintiff walked or ran into a moving vehicle, Provinsal v. Peterson, *supra;* Jacobs v. Williams (La. App.)

160 So. 861; Pettijohn v. Weede, 209 Iowa, 902, 227 N. W. 824; * * * or where the accident would have happened whether the defendant had been going faster or slower, Crutchley v. Bruce, 214 Iowa, 731, 240 N. W. 238; or where it appeared that the accident might have been avoided if the defendant had driven faster, Sorsby v. Benninghoven, *supra*. If the accident could not have been avoided or would have happened even if there had been an absence of excessive speed, such speed was not a material element or substantial factor in bringing it about and hence not a proximate cause. 5 Am. Jur. p. 596, § 164, note 9; Note, 77 A. L. R. 598; Restatement, Torts, § 432. It appears without dispute that speed did not affect the conduct of plaintiff or defendant to cause the collision. A reduced speed would not have avoided the accident. * * * If defendant had been going 10 miles per hour, plaintiff would have struck the car about opposite the driver's seat. * * * In such a situation speed is not a proximate cause. Eastburn v. U. S. Exp. Co. 225 Pa. 33, 73 A. 977; Wetherill v. Showell, Fryer & Co. Inc. 28 Pa. Dist. R. 259, affirmed 264 Pa. 449, 107 A. 808."

In Provinsal v. Peterson, 141 Minn. 122, 123, 169 N. W. 481, 482, this court stated:

"Plaintiff offered to prove that the automobile was being run at an excessive rate of speed, and the evidence was excluded on defendant's objection as immaterial. Plaintiff contends that the ruling was error * * *. In this we do not concur. It seems clear that the speed of the automobile had nothing to do with the accident. Plaintiff did not see it approaching, and the speed thereof in no way could have deceived or misled him. He walked into the car and got hurt, and that is all there is to the situation."

As stated in DeHaan v. Wolff, 178 Minn. 426, 429, 227 N. W. 350, 351:

"There is no occasion for determining the meaning or effect of the provision of L. 1927, p. 563, c. 412, § 18(a), that 'the driver of any vehicle * * * traveling at an unlawful speed shall forfeit any right of way which he might otherwise have hereunder.' Assuming that

defendant was approaching at an unlawful speed and so had forfeited his right of way, plaintiff did not know it because he did not see defendant until the moment of impact. Plaintiff could not be relieved from the duty of care by any want of it on defendant's part of which he, plaintiff, was ignorant."

So, in the instant case, the speed of defendant's car after entering the intersection does not appear to be the proximate cause of the accident. His conduct prior thereto, according to his testimony, which is undisputed, indicates the exercise of due care on his part. After his entrance into the intersection he acquired the right of way, and, whether his speed then increased to 15 or 20 miles an hour, it is obvious that this factor alone was not the proximate cause of the accident. Had his speed been greater, plaintiff might not have struck his car at all. Had his speed been less, plaintiff might have struck his car squarely in the center with perhaps greater damage resulting. Under such circumstances, we feel that the evidence would not sustain a finding that defendant's speed was the proximate cause of the accident or that it was so excessive as to forfeit his right of way or relieve plaintiff from the statutory obligations imposed upon and disregarded by him. Since the record clearly discloses plaintiff's contributory negligence and the absence of conduct on the part of defendant sufficient to relieve plaintiff from the penalties thereof, we feel that the trial court was correct in directing a verdict for defendant.

Affirmed.