## RUDY KOLATZ v. LAWRENCE J. KELLY, *d.b.a.* AUDITORIUM PARKING LOT, AND ANOTHER.[1]

March 18, 1955.

No. 36,388.

[1]Reported in 69 N. W. (2d) 649.

164

*Robins, Davis & Lyons, Richard Converse,* and *Stanley Nemer,* for appellant.

*Murnane & Murnane, Thomas Battis, Meagher, Geer, Markham & Anderson,* and *David W. Nord,* for respondents.

THOMAS GALLAGHER, JUSTICE.

Plaintiff commenced this action to recover for personal injuries and property damage to his automobile sustained when an automobile owned by the defendant Dr. George X. Levitt and driven by one Harvey T. Thompson, an employee of the defendant Lawrence J. Kelly, collided with plaintiff's automobile on the morning of December 19, 1950, at the intersection of Fourth and Market streets in a downtown business area in the city of St. Paul. At the close of plaintiff's evidence, the trial court directed a verdict for the defendants on the ground that the plaintiff was guilty of contributory negligence as a matter of law.

The plaintiff thereafter moved the court below for a new trial and assigned error on appeal upon the following grounds: (1) That the court erred in directing a verdict for defendants for the reason that the issue of plaintiff's contributory negligence was a fact issue for determination by the jury; (2) that the court erred in sustaining defendants' objections to certain questions set forth in plaintiff's motion for a new trial; and (3) that the court erred in denying plaintiff's motion for a new trial, contending on the last assignment that the plaintiff was not negligent as a matter of law; that there was evidence upon which a jury could find that the plaintiff had acquired the right of way over the intersection at the time the collision

occurred; and that there is evidence which establishes negligence by defendants' driver proximately causing the accident.

It does not appear that the relationship between defendants Levitt and Kelly is involved in this appeal. The sole and important problem here is the legal issue of whether plaintiff was guilty of contributory negligence as a matter of law which proximately contributed to the collision and his resulting injuries and property damage.

We must, on review, apply the rule that where one party moves for a directed verdict there must be admitted for the purposes of the motion the credibility of the evidence for the adverse party and every inference which may fairly be drawn from such evidence and that the most favorable aspect must be ascribed to the evidence of the adverse party, for a verdict may be directed only in those unequivocal cases where it clearly appears to the court on the trial that it would be its manifest duty to set aside a contrary verdict as not justified by the evidence or as contrary to the law applicable to the case. While the right to direct a verdict also involves the duty to do so, nevertheless, it is a right to be cautiously and sparingly exercised. In legal effect it is a determination of the issues by the court without a jury as matters of law. If there is a question of fact, the case should go to the jury, and it becomes reversible error to direct a verdict.[2]

If the evidence is viewed in its most favorable aspect to plaintiff's claim, the record discloses the following facts and circumstances: The plaintiff was driving his automobile from Kellogg boulevard north on Market street approaching the intersection at Fourth, a through street, in the morning of a perfectly clear day. As he approached the intersection from the south, he came to a stop two to four feet south of the east-and-west crosswalk. He then waited for a streetcar which was traveling east on Fourth street to discharge some passengers near the southwest corner of the intersection and then to proceed through. The passengers crossed Market street in front of his car, and after the streetcar had also crossed Market

[2] 6 Dunnell, Dig. & Supp. § 9764; Abraham v. Byman, 214 Minn. 355, 8 N. W. (2d) 231; Montague v. Loose-Wiles Biscuit Co. 194 Minn. 546, 261 N. W. 188; LeVasseur v. Minneapolis St. Ry. Co. 221 Minn. 205, 21 N. W. (2d) 522; Foster v. Bock, 229 Minn. 428, 39 N. W. (2d) 862.

street, he looked to the left and to the right and then moved his car to a point about three feet inside the intersection and stopped again, looking to the left and to the right for moving cars. Seeing no moving cars in either direction, he started across the intersection. The streets were icy and he drove slowly, going about three or four miles per hour. While plaintiff was so proceeding, another automobile driven by one Rudolph H. Gutzmann approached the intersection from the north on Market street, entering the intersection about three or four feet, then coming to a stop and backing into a parking space on the west side of Market street. This caused plaintiff to slacken his speed, fearing the Gutzmann car might turn to the left in front of him. Plaintiff then looked in both directions again, saw no car coming, and resumed his speed of three to four miles per hour across the intersection. The plaintiff testified that, at the time of this second look after having entered the intersection, the front wheels of his car were across the second rail of the streetcar tracks and he was approximately at the center of the intersection; that, when the hind wheels of his car hit the north rail of the streetcar tracks, defendants' car, driven by one of their employees, crashed into plaintiff's car on the right side.

Rudolph H. Gutzmann, who appeared as one of plaintiff's witnesses and who was the owner of the car which drove slightly into the intersection from the north and then backed up to park, testified that the plaintiff stopped before entering the intersection, estimating the stopping point as 20 to 25 feet south of the intersection; that the plaintiff entered the intersection first; that when he observed the defendants' car coming from the east it was then 150 to 200 feet from the intersection and that this was after the plaintiff's car had entered the intersection and was "in motion rather, across the street"; that when he saw the plaintiff's car going north across the intersection at about the first rail he then saw the other car somewhere between 50 to 75 feet to the east of the intersection; that he observed the wheels were stationary and that the car was skidding. Gutzmann further testified that after the crash and after having parked his car he went to the scene of the accident, saw the skid marks made by the defendants' car, and estimated that they ran a distance of from 50

to 75 feet. There seems to be no dispute in the testimony that the streets were slippery.

The deposition of defendants' driver, Harvey T. Thompson, showed that the weather on the day of the accident was clear but the streets were icy—"were glass." He testified that he first saw the plaintiff's car when it was the same distance into the intersection, if not farther back, as his was and that he was then on the edge of the intersection, just entering it. The court ordered the record to show that this latter testimony was admitted as though Thompson were being examined at the trial by plaintiff as an adverse witness.

Both defendants moved for directed verdicts on two grounds; first, that the plaintiff was guilty of contributory negligence as a matter of law and, second, that the plaintiff had failed to prove actionable negligence on the part of the defendants or their agents proximately contributing to the occurrence of the accident. The trial court directed the verdict for both defendants entirely upon the theory that contributory negligence was conclusively established by the plaintiff's answers to certain questions in cross-examination, as follows:

"Q. And you did not see any car moving in that block?

"A. No.

"Q. And you didn't hear any car approaching from your right?

"A. No.

"Q. And you were moving slowly at the time, you say?

"A. Yes.

"Q. Could you have stopped your car within a very short distance had you seen this car coming?

"A. Yes; if I had seen that car, I could have stopped in a foot or two."

The defendants argued below and now contend that the defendants' car was approaching the intersection and was in plain sight and that, under the rule of Moore v. Kujath, 225 Minn. 107, 29 N. W. (2d) 883, 175 A. L. R. 1007, a plaintiff who looks and fails to see what is in plain sight when there are no surrounding circumstances to obstruct his vision or distract him is guilty of contributory negligence as a matter of law.

The aforesaid statement elicited from plaintiff on cross-examination cannot be controlling of the entire record in this case. His entire testimony and his conduct in operating his car on this occasion must be considered. We must further consider the testimony of Gutzmann to the effect that he saw defendants' car, after the plaintiff's car had entered the intersection first, an estimated distance of 150 to 200 feet to the east of the intersection; the physical facts consisting of icy street surfaces and defendants' skid marks ranging from 50 to 75 feet on the east approach to the intersection; and the utter conflict between the testimony of plaintiff's witnesses and that of defendants' driver Thompson that he in effect entered the intersection first, to the right, ahead of the plaintiff. In view of these factors was it not for the jury to evaluate the questions and answers on direct and on cross-examination, as well as the physical facts and all the surrounding circumstances and any distractions (that may have caused interference) from the passing streetcar, the pedestrians crossing from west to east, and the entering of Gutzmann's car into the intersection about to be parked to the north on Market street in relation to the alleged contributory negligence of the plaintiff and the alleged negligence of the defendant in the light of any and all reasonable inferences that might be drawn from the evidence?

It is not logical to assume from the whole of the evidence viewed in the light most favorable to the adverse party that the best inference to be drawn therefrom is that the defendants' driver was approaching the intersection within plaintiff's sight when the plaintiff first looked either before entering or after having entered into the intersection two to three feet. The inference might well be drawn by a jury that the defendants' car was scarcely in sight, if at all, at the times plaintiff looked. A jury could well be justified in concluding from the evidence that the plaintiff had looked one or more seconds before the witness Gutzmann first looked and, if defendants' car was 200 feet away when Gutzmann first looked, it must have been farther away when plaintiff first looked after entering the intersection. This is not a mere possibility. It is a probability fully consistent with the occurrence of this collision and all its surrounding circumstances.

Under all the circumstances, did the "look-and-not-see-that-which-is-in-plain-sight rule" become decisive of the facts and circumstances, or were the facts here such as to override that rule and bring plaintiff within the rule laid down in Johnston v. Selfe, 190 Minn. 269, 251 N. W. 525, and the later decisions interpretative of M. S. A. 169.20, subd. 3, as to vehicles entering an arterial highway or stop street from a side street or intersecting road?

The day being clear, there was nothing to indicate any distracting circumstances to the defendants' approach to the intersection from the east proceeding on their side of the street. It is difficult to find any excuse for their driver's conduct upon the streets of the city in that section resulting finally in a skid of his automobile from 50 to 75 feet before an impact occurred with the plaintiff's automobile.

The defendants rely on Moore v. Kujath, *supra,* and the reasoning applied in that case as decisive upon the facts and the surrounding circumstances in the case at bar. We must conclude that Moore v. Kujath, *supra,* is applicable to this case only in part because in that case the two cars approached the intersection at almost the same time. One car was 60 feet away from it when the other car was 100 feet away, and they both arrived at the intersection at approximately the same time. The failure of the defendant to look and see the plaintiff's car coming into the intersection at practically the same moment as he, when there was nothing to obstruct vision or distract the driver, was held to be negligence as a matter of law. The above analysis of the facts shows that the instant case is far removed from that situation.

Section 169.30, which authorizes the establishment of arterial or through highways and stop signs at one or more points at intersections, does not in any way modify other statutes which control right of way and speed. Stop signs at through highways or at street intersections do not require operators of cars to enter the arterial street at their peril but only to exercise ordinary and reasonable care with regard to traffic on the through street before entering thereon. They must, however, make such reasonable observations as the conditions surrounding the intersection will permit before they

proceed across. Bohnen v. Gorr, 234 Minn. 71, 47 N. W. (2d) 459. While the operators of cars upon such streets or highways have the right of way by reason of the through street or highway, such operators are nevertheless bound to operate them with reasonable care as to the traffic entering from the side streets. Under our existing statutes, after a car has once stopped for a through street in response to the stop sign and the motorist has exercised the ordinary and reasonable care required under § 169.20, subd. 3, before entering commensurate with the care required under the circumstances, the usual rules in regard to right of way and speed prevail. Bell v. Pickett, 178 Minn. 540, 227 N. W. 854. The driver on the through street cannot ignore the statute on speed restrictions, § 169.14, subds. 1 (reasonable speed), 2 (miles-per-hour limit), and 3 (when reduced speed required) ; and, if a driver upon an arterial highway travels at an unlawful speed across a street intersection, he forfeits the right of way which he might otherwise have. § 169.20, subd. 1. See, Jacobsen v. Ahasay, 188 Minn. 179, 246 N. W. 670.

If motorists were privileged to rely entirely on the assumption that the other driver would always respect their rights, then the defense of contributory negligence would seldom, if ever, arise. On the other hand, if the driver of an automobile could not rely upon his rights to at least some ordinary or reasonable extent, the right-of-way rules would be of little value, useless, and ineffective, and a premium would only be put on recklessness.[3]

Considering the manner in which the two automobiles in this case approached the intersection and entered into it and all surrounding circumstances, it is only reasonable to conclude that the inferences to be drawn from the evidence and the conflicts in the testimony are for the jury and that the negligence of the defendants and the contributory negligence of the plaintiff present fact questions. This court has often asserted that due care in looking is not measured by the number of times one looks; that there is no rule of law requiring a driver who has looked effectively once to look again, but

---

[3]Haleen v. St. Paul City Ry. Co. 141 Minn. 289, 170 N. W. 207; Salters v. Uhlir, 208 Minn. 66, 292 N. W. 762; Montague v. Loose-Wiles Biscuit Co. *supra;* see, 35 Minn. L. Rev. 357 to 364.

whether he was negligent in failing to do so is for a jury to decide. Norling v. Stempf, 208 Minn. 143, 293 N. W. 250; Jeddeloh v. Hockenhull, 219 Minn. 541, 545, 18 N. W. (2d) 582, 585; Demmer v. Grunke, 230 Minn. 188, 194-195, 42 N. W. (2d) 1, 6; Bosell v. Rannestad, 226 Minn. 413, 421, 33 N. W. (2d) 40, 45; Kraus v. Saffert, 208 Minn. 220, 225, 293 N. W. 253, 255; see, Johnston v. Jordan, 193 Minn. 298, 300, 258 N. W. 433, 434.

Even the fact that one of the participating drivers fails to look does not relieve an oncoming driver of the duty to use due care and the statutory obligation to yield the right of way to a driver who has entered the intersection first an appreciable length of time before the other and thereby gained the right of way. Wilmes v. Mihelich, 223 Minn. 139, 25 N. W. (2d) 833; Kane v. Locke, 216 Minn. 170, 12 N. W. (2d) 495; Draxton v. Katzmarek, 203 Minn. 161, 280 N. W. 288; Rosenau v. Peterson, 147 Minn. 95, 179 N. W. 647; Geiger v. Sanitary Farm Dairies, 146 Minn. 235, 178 N. W. 501; Carlson v. Stork, 188 Minn. 204, 246 N. W. 746; Coffman v. Kummer, 179 Minn. 120, 228 N. W. 751.

The Minnesota statute, § 169.20, subd. 1, which defines the rights and duties of motorists at intersections, has been the subject of interpretation in many recent decisions. The leading case in point appears to be Moore v. Kujath, 225 Minn. 107, 29 N. W. (2d) 883, 175 A. L. R. 1007. Most of the rules as to the duty to look are now fairly well settled in this state especially since the decision in the Moore case which laid down the rule that before directing a verdict under what was theretofore known as the plain-sight rule in Chandler v. Buchanan, 173 Minn. 31, 216 N. W. 254; Sorenson v. Sanderson, 176 Minn. 299, 223 N. W. 145; DeHaan v. Wolff, 178 Minn. 426, 227 N. W. 350; and Hermanson v. Switzer, 188 Minn. 455, 247 N. W. 581, the court must look to the surrounding circumstances and must take into account such considerations as the estimates of distance, time, and speed of the cars involved, the weather, the lack or presence of obstructions and distractions, the contour of the surrounding area, and the condition of the streets or highways upon which the motorists are traveling. These considerations cannot be

ignored even though the intersection may involve an arterial highway or stop street. In Ranum v. Swenson, 220 Minn. 170, 174, 19 N. W. (2d) 327, 330, this court said, in discussing the plain-sight rule established in the aforesaid cases, that:

"* * * We expressly reject the policy of applying arbitrary standards of behavior amounting in effect to rules of law to all cases without regard to surrounding circumstances."

and further that the arbitrary principle that failure to see that which is in plain sight necessarily constitutes contributory negligence as a matter of law, without regard to surrounding circumstances, is rejected. The meaning of the plain-sight rule earlier enunciated in Chandler v. Buchanan, *supra,* led to a clarification of its meaning, and the court has now made more explicit its considerations which make the plain-sight rule applicable beginning with Moore v. Kujath, *supra,* followed by Martin v. Reibel, 227 Minn. 106, 34 N. W. (2d) 290; Rose v. Western States L. Ins. Co. 230 Minn. 393, 41 N. W. (2d) 804; Mattfeld v. Nester, 226 Minn. 106, 32 N. W. (2d) 291, 3 A. L. R. (2d) 909; Demmer v. Grunke, *supra.*

■ It is the rule, well recognized in this court, that a motorist entering an arterial highway or a through street must stop and in so doing must recognize and have in mind that he is inviting approaching vehicles to proceed through the intersection. But it is also the rule that, once the motorist entering upon the arterial highway or through street has stopped and used due care as to vehicles in or near the intersection, he may proceed with the benefit of the right of way and is not negligent if an accident occurs. Freeman v. Matson, 230 Minn. 261, 41 N. W. (2d) 249. Whether a driver is justified in assuming that an approaching vehicle will stop or slow down for him is ordinarily a question for the jury.[4]

While the Minnesota highway traffic regulation act, c. 169, provides the statutory rules of the road, nevertheless, the common-law rules of negligence are invoked wherever necessary in fixing liability

[4]See analysis of the rules of the road and the rights and duties of motorists at intersections in 35 Minn. L. Rev. 357 to 363, dealing with M. S. A. c. 169 as it is applied under our statutory and decision law.

as to participants in a highway accident, for as this court said in Wilmes v. Mihelich, 223 Minn. 139, 144, 25 N. W. (2d) 833, 836:

"* * * the right-of-way statute (§ 169.20, subd. 1) does not prescribe the full measure of duty imposed upon drivers at intersections, and that the common-law duty to exercise due care is not nullified thereby."

It is specifically provided by the highway traffic regulation act that a violation thereof shall "not be negligence per se but shall be prima facie evidence of negligence only." That statute applies to violations by either or any of the parties to the action. §169.96. The questions of negligence, or of contributory negligence, for an alleged violation of the statute is not one of law for the court, but a question of fact for the jury, except in those instances when, if not rebutted, it becomes conclusive.[5]

■ We therefore conclude that the plaintiff was entitled to have the question of defendants' negligence and plaintiff's contributory negligence submitted to a jury and that the court below was in error in directing a verdict against the plaintiff holding him guilty of contributory negligence as a matter of law. Ryan v. Griffin, 241 Minn. 91, 62 N. W. (2d) 504.

Since we have thus disposed of this case, no further discussion of other assignments of error is necessary.

The verdict directed below is reversed, and a new trial granted.
Reversed.

[5]Warning v. Kanabec County Co-op. Oil Assn. 231 Minn. 293, 42 N. W. (2d) 881; LeVasseur v. Minneapolis St. Ry. Co. supra; Yien Tsiang v. Minneapolis St. Ry. Co. 213 Minn. 21, 4 N. W. (2d) 630; Deach v. St. Paul City Ry. Co. 215 Minn. 171, 9 N. W. (2d) 735; Fickling v. Nassif, 208 Minn. 538, 294 N. W. 848; Schultz v. Rosner, 209 Minn. 462, 296 N. W. 532; Krinke v. Gramer, 187 Minn. 595, 246 N. W. 376; Coffman v. Kummer, supra; Glynn v. Krippner (8 Cir.) 60 F. (2d) 406; Bayers v. Bongfeldt, 201 Minn. 546, 277 N. W. 239; Butcher v. Tomczik, 200 Minn. 262, 273 N. W. 706; Johnston v. Jordan, supra; Demmer v. Grunke, supra; Bosell v. Rannestad, supra; Jeddeloh v. Hockenhull, supra; Kraus v. Saffert, supra; Norling v. Stempf, supra. But see Wojtowicz v. Belden, 211 Minn. 461, 1 N. W. (2d) 409, where verdict was justifiably directed on prima facie case in absence of opposing evidence.