# R. N. ROSE v. WESTERN STATES LIFE INSURANCE COMPANY OF NORTH DAKOTA AND ANOTHER.[1]

March 17, 1950.

No. 35,086.

*Phillips & Sherwood,* for appellants.
*S. G. Fitzpatrick,* for respondent.

KNUTSON, JUSTICE.

Appeal from a judgment entered upon a verdict for plaintiff.

This case arose out of a collision between a 1937 Ford pickup truck owned and driven by plaintiff and a 1946 Ford sedan owned by defendant insurance company and driven by defendant Roy Miners on trunk highway No. 10 about two miles east of Staples, in this state, on July 11, 1947, about 11 a. m. The day was clear, and the bituminous highway was dry.

The claims of the parties as to the facts leading up to the collision are conflicting, but, taking the evidence most favorable to plaintiff,

---

[1]Reported in 41 N. W. (2d) 804.

as we must, the jury could find that plaintiff, who was a farm-to-farm salesman for McConnon's products, was driving east on highway No. 10; that, as he passed what is known and referred to in the record as the Merton driveway, which enters highway No. 10 from the north at approximately right angles, it occurred to him that he might buy some strawberries from the Mertons; that he had passed the driveway about 50 feet, when he stopped and backed up to a point slightly west of the Merton driveway; that he then looked both east and west and saw nothing coming, so he placed his automobile in low gear, extended his arm so as to signal for a left turn, and proceeded to cross the highway to the Merton driveway somewhat at an angle to the northeast; that when he had traveled to within five or six feet of the north edge of the highway he looked again to the east and saw defendants' car approaching from the east, about 150 feet away, at a high rate of speed; that he estimated the speed of the approaching car to be 70 miles per hour; that he saw that he could not complete the crossing safely, so he put on his brakes and stopped; and that almost immediately he was struck by defendants' car. The left front of defendants' car struck the left front and fender of plaintiff's car. Plaintiff's car was turned around and came to rest some 20 or 25 feet from the place of impact, still on the pavement, facing in a southwesterly direction. Defendants' car went into the north ditch and continued for a distance variously estimated to have been from 215 feet to a block, after running over several hay shocks.

Defendant Miners was returning from a company convention at Breezy Point Lodge. With him were his wife and the chairman of the board of directors of defendant company. The highway at the place of collision is straight. East of the Merton driveway, plaintiff had a clear view for a distance of about 350 feet to the crest of a dip, which begins at that point and extends easterly for about 40 rods. The bottom of the dip is about six feet below the crest, and an automobile traveling west through this dip is obscured to a driver of a car at the Merton driveway, although it does appear that it might be possible to see the top of a car passing through the dip.

Defendants' car was of a dark color, and the pavement also was black. At the point of collision, the tarvia portion of the highway is 24 feet wide, and there are six-foot shoulders on each side of the tarvia portion. The ditch on the north side is about 2½ feet deep and slopes gradually toward the bottom. Both cars were badly damaged or demolished. Defendants' car was damaged to the extent of about $700, and plaintiff's truck was reduced practically to junk.

Miners claims that plaintiff's car became visible to him when he reached the crest of the knoll after passing through the so-called dip some 350 feet east of the Merton driveway; that it was his impression that plaintiff's car was traveling toward him; and that when about 40 or 50 feet separated the two cars plaintiff turned in front of him without giving any signal and that he had no chance to avoid the collision.

At the request of defendants, plaintiff submitted to an examination of his eyesight at the time of the trial. The examination was confined to the customary test of reading letters on charts. The doctor who conducted the examination testified that plaintiff was practically blind in his right eye and that the vision in his left eye was about one-eighth or one-ninth of normal. No examination was made of plaintiff's ability to see objects at a distance. Between the time of the collision and the time of the trial, plaintiff had submitted to an operation for the removal of a cataract from his right eye, and the doctor admitted that such operation might affect his vision in both eyes for a time. Plaintiff admitted that his vision was about the same at the time of the accident as it was at the time of the trial. Plaintiff had driven a car for about 30 years. His testimony was that, while the vision in his right eye had never been good, he had had no difficulty in driving or observing objects on the road. He does not wear glasses except to read. He claimed that he had normal vision in his left eye for a man of his age, which was 66 years at the time of the trial. He was thoroughly familiar with the road.

It is the contention of defendants (1) that Miners was not guilty of negligence; (2) that if he was it was not the proximate cause of the collision; and (3) that plaintiff was guilty of negligence as a matter of law which proximately contributed to the happening of the collision.

We have no difficulty in holding that the verdict of the jury finding Miners guilty of negligence is sustained by the evidence. The jury could find that Miners, driving at a high rate of speed, saw plaintiff's truck when it was 350 feet away as Miners reached the crest of the dip in the highway; that plaintiff was then in the act of crossing the highway; and that, without slackening his speed, Miners ran into the left front of plaintiff's truck, causing the collision. Plaintiff's testimony regarding the speed of Miners' car is substantiated and corroborated by the physical facts, as well as by the testimony of plaintiff's other witnesses. The distance defendants' car traveled after the accident, the extent of the damage done to both automobiles, and the time defendants' car was visible all have some bearing on speed and could be considered by the jury.

The question of contributory negligence is more troublesome, but we are of the opinion that on this question also it was proper to submit the case to the jury, and that the verdict is sustained by the evidence.

Defendants contend that plaintiff should have seen the approaching car in time to refrain from crossing the highway, and that his failure to do so was caused by his defective eyesight. The jury could find that defendants' car was obscured by the dip in the highway and suddenly emerged over the crest of the dip, traveling at a high rate of speed, and was not observed by plaintiff until within 150 feet of his automobile; that plaintiff then did all that he could do to avoid the collision, but, nevertheless, was struck by defendants' car. The jury could further find that, having looked to the east and having seen nothing more than 350 feet away, plaintiff was justified in proceeding to make the left-hand turn. The time it would take to travel the approximately 200 feet from the crest of the dip to the point where plaintiff first observed the approaching

automobile would be a matter of seconds if Miners was traveling as fast as plaintiff claims that he was and as the jury could find the fact to be.

The jury could also find that at the time of the collision plaintiff's eyesight was sufficient so that he could have observed defendants' car sufficiently far away to safely cross the highway had Miners been traveling at a reasonable rate of speed. Plaintiff had driven an automobile for many years without any apparent difficulty. He possessed a driver's license. He was able to see and distinguish objects on a small photograph at the time of the trial. He had had an operation on his right eye for the removal of a cataract between the time of the accident and the time of the trial, which, according to the testimony of the doctor who appeared for defendants, might have affected the vision of both eyes temporarily. The jury had an opportunity to observe plaintiff, and it determined that at the time of the accident his eyesight was sufficient to enable him to properly drive and operate his automobile. The determination of the jury in that respect is sustained by the evidence.

Defendants rely upon Chandler v. Buchanan, 173 Minn. 31, 216 N. W. 254; Sorenson v. Sanderson, 176 Minn. 299, 223 N. W. 145; DeHaan v. Wolff, 178 Minn. 426, 227 N. W. 350; and Hermanson v. Switzer, 188 Minn. 455, 247 N. W. 581, in support of their contention that plaintiff was guilty of contributory negligence as a matter of law, basing their contention upon the proposition that one who fails to see that which is plainly visible must be held to be guilty of negligence. Even if we were to hold that these cases are authority for the proposition urged by defendants, since Ranum v. Swenson, 220 Minn. 170, 19 N. W. (2d) 327, and Moore v. Kujath, 225 Minn. 107, 29 N. W. (2d) 883, 175 A. L. R. 1007, they would be inapplicable to the facts we have before us in this case. Here, the jury could well find that plaintiff stopped his automobile before crossing the highway, looked to the east and saw nothing coming at the crest of the dip 350 feet away, and then proceeded to cross cautiously and was struck by defendants' car, which emerged over the crest of the dip traveling the intervening distance at a rapid rate of speed,

whereas plaintiff could have crossed the highway had defendants' car been traveling at a reasonable rate of speed.

What was said in Mattfeld v. Nester, 226 Minn. 106, 119, 32 N. W. (2d) 291, 301, 3 A. L. R. (2d) 909, following Dahl v. Collette, 206 Minn. 604, 289 N. W. 522, is applicable here. We there said:

"* * * Ordinarily, where the defendant is out of sight of the driver crossing an intersection, as where defendant is behind an obstruction or in a dip of the road and it appears to plaintiff as a result of observation that it is safe to cross and would be but for defendant's unanticipated speed or other negligence, the question whether plaintiff was guilty of contributory negligence is one of fact for the jury."

This was followed in Martin v. Reibel, 227 Minn. 106, 34 N. W. (2d) 290, where the dip obscuring the approaching driver's car was 500 feet from the intersection. Were we to apply any other rule, it would be impossible for a motorist to cross or enter a highway at all where there are obstructions to his view, except at his own peril.

Applying the rule in Mattfeld v. Nester, *supra,* defendants' whole case resolves itself into a question of whether plaintiff was guilty of contributory negligence as a matter of law for driving a car while suffering from defective eyesight and whether the jury was compelled to find that he failed to see defendants' automobile because of the defect in his eyesight. We have already answered this contention. We believe that the question of plaintiff's contributory negligence and whether it proximately contributed to the collision was for the jury.

Affirmed.