## MARTIN KANTAR v. WEST END AIR CONDITIONING COMPANY AND ANOTHER.

144 N. W. (2d) 592.

August 12, 1966—No. 39,697.

---

*M. L. Grossman* and *Irwin Ketroser,* for appellant.

*Peterson & Holtze* and *Roy W. Holsten,* for respondents.

NELSON, JUSTICE.

Plaintiff, Martin Kantar, commenced this action against the defendants, West End Air Conditioning Company and Olive Kathryn Graham, for injuries and damages sustained in an automobile accident which occurred at the intersection of Excelsior Boulevard and Wooddale Avenue, Hennepin County, shortly after 12 noon on June 16, 1960.

After the jury returned a verdict in favor of defendants, plaintiff moved the trial court for judgment notwithstanding the verdict and a new trial on the question of damages alone or, in the alternative, for a new trial on all the issues. Plaintiff has appealed from an order denying the motion.

Viewing the evidence in the light most favorable to defendants as the prevailing parties, the facts appear as follows:

Excelsior Boulevard is a 4-lane highway which runs in an east-west direction, its east- and westbound lanes being separated by a grass boulevard. On the day of the accident plaintiff was driving his 1957 Chevrolet 2-door station wagon west on this highway. Defendant Graham, accompanied by her 13-year-old son, was driving a 1959 Buick automobile owned by defendant West End east, intending to turn north

onto Wooddale Avenue. Defendant's automobile came to the intersection with a green light for traffic on Excelsior Boulevard. It was noontime, raining, and the traffic was congested. A vehicle preceding the Graham car turned left into the intersection and stopped east of the cement berm or island separating the two lanes of Wooddale Avenue. Instead of turning into the intersection, which would have blocked the "cross traffic," Mrs. Graham waited and the semaphore turned red. When it again turned green, Mrs. Graham proceeded to the location previously occupied by the left-turning vehicle and came to a complete stop east of the berm separating the Wooddale Avenue lanes at the south edge of the first or southernmost westbound lane on Excelsior Boulevard. At least two vehicles in that lane had stopped east of the Wooddale intersection because of the congestion. Before proceeding, Mrs. Graham looked to the right and saw no vehicles approaching in the northernmost or outer of the westbound lanes on Excelsior. She then proceeded at a speed of approximately 5 or 6 miles an hour and for the first time observed the plaintiff's vehicle in the outer lane emerging alongside the two vehicles stopped in the first lane. She slammed on her brakes and stopped immediately, with her front end slightly over the imaginary line dividing the two westbound lanes. When she had stopped, the plaintiff's station wagon was still in motion and slid forward perhaps 5 or 6 feet, coming to rest with its left side striking the front of Mrs. Graham's car. After the contact the two vehicles were close together and may or may not have been touching. The only damage to the Buick from the contact was a slight flattening of the chrome nosing or trim across the front of the hood. There was no visible damage to the paint, grill, fenders, or bumper. Mr. Graham had the chrome strips replaced that afternoon and, according to Mrs. Graham, the car was then "back as good as new."

Mrs. Graham's 13-year-old son testified in a deposition that he had never seen plaintiff's car until the cars hit. At trial he stated he had seen plaintiff's car out of the corner of his eye before there was any impact.

Plaintiff testified that he was driving west on Excelsior Boulevard at approximately 20 miles per hour at the time of the accident. Plaintiff's

car had a dent on the left front door and the left front fender was damaged. No other damage to the plaintiff's car is disclosed by the record.

A St. Louis Park policeman, Robert F. Linnell, arrived at the scene shortly after the accident. Both drivers stated to him that they were not injured. His testimony shows that both plaintiff and defendant removed their cars from the intersection before getting into the patrol car to give the policeman the usual information concerning an accident.

The main issues before the court on this appeal are (1) whether that portion of Excelsior Boulevard and Wooddale Avenue where the accident occurred constitutes a separate intersection within the meaning of Minn. St. 169.01, subd. 36(b), and (2) whether the evidence supports the verdict of the jury.

Plaintiff contends that at the point of the east half of Wooddale Avenue and the north half of Excelsior Boulevard where the accident occurred, the roadways of Excelsior Boulevard are 30 feet or more apart. It is true that the grass boulevard to the west of Wooddale Avenue is 30 feet in width, but to the east of Wooddale Avenue the width of the boulevard is 26 feet. The parties are in agreement that the accident occurred on the east half of Wooddale Avenue. Section 169.01, subd. 36(b), contemplates the roadways being separated by a divider or boulevard of at least 30 feet in width. It provides:

"Where a highway includes two roadways 30 feet or more apart, then every crossing of each roadway of such divided highway by an intersecting highway shall be regarded as a separate intersection. In the event such intersecting highway also includes two roadways 30 feet or more apart, then every crossing of two roadways of such highways shall be regarded as a separate intersection."

In Wagenhals v. Flint, 262 Minn. 326, 114 N. W. (2d) 641, this court was faced with the problem of construing § 169.01, subd. 36(b), with respect to a similar intersection. There the roadway intersected was divided by a boulevard having different widths on each side of the intersection. It appears that on the south half, which the plaintiff was required to travel, the width of the boulevard was 38 feet while on the

north half the boulevard was 25 feet. The court in Wagenhals held that for the purpose of applying a right-of-way statute the north half of the intersection, being divided by a boulevard measuring less than 30 feet, was not a separate intersection and that the south half of the intersection, being divided by a boulevard exceeding 30 feet, was a separate intersection. This court in Wagenhals said (262 Minn. 331, 114 N. W. [2d] 645):

"* * * If the rights of motorists are to be governed by what occurs as they enter an intersection, it is essential that they be able to take in the whole situation at a glance. This, of course, cannot be done where cars enter an intersection at some considerable distance apart. Apparently the legislature had this problem in mind when it reduced the size of what is considered an intersection to permit the rights and obligations of drivers to be established when they are in closer proximity to one another."

Since the location of the accident and the widths of the grass boulevards in the case at bar are not subject to dispute, it would appear that Wagenhals v. Flint, *supra,* is controlling and that, therefore, Mrs. Graham while making a left turn onto Wooddale Avenue from Excelsior Boulevard did not enter a separate intersection and thus was proceeding on the green light.

It is the contention of the defendants that Mrs. Graham had a right to assume until notice to the contrary that other drivers would obey the law; that plaintiff under the conditions then existing improperly passed on the right and entered the intersection with such lack of lookout and control and at such a speed that he could neither stop nor otherwise avoid contact with defendant's stopped car; and that from the evidence it is clear that whether Mrs. Graham had violated § 169.20, subd. 2, was a question for the jury's determination. Even though we were to assume that plaintiff's vehicle was so close to the intersection as to constitute an immediate hazard and thus make defendant Graham's proceeding into the intersection prima facie evidence of negligence, there is, nevertheless, ample evidence in the record to show

justification for Mrs. Graham's movements.[1] The record indicates that in the instant case Mrs. Graham stopped at the intersection, yielded to oncoming traffic, and then proceeded into the intersection.

It is quite reasonable to assume that the jury also found the plaintiff contributorily negligent in entering the intersection at a speed of 20 miles per hour while passing on the right of two stopped cars. Section 169.18, subd. 4(d), provides:

"The driver of a vehicle may overtake and pass another vehicle upon the right only under conditions permitting such movement in safety. In no event shall such movement be made by driving off the pavement or main-travelled portion of the roadway."

The jury could reasonably have found under the circumstances that Mrs. Graham did not act negligently in proceeding with her left turn. Clearly the question of negligence in this type of situation is one for the jury to determine. Rose v. Western States Life Ins. Co. 230 Minn. 393, 41 N. W. (2d) 804. In Johnson v. Mancilman, 241 Minn. 461, 465, 63 N. W. (2d) 569, 571, we said:

"* * * [T]he question whether he should have taken additional safeguards or made additional observations before crossing is ordinarily one for jury determination. * * * This court has repeatedly held that only in the clearest of cases where the facts are undisputed and can lead to but one conclusion is a court justified in finding contributory negligence as a matter of law."

The case of Tschida v. Dorle, 235 Minn. 461, 51 N. W. (2d) 561, which plaintiff relies upon heavily, is clearly distinguishable from the case at bar. In Tschida the defendant saw plaintiff's motorcycle when

---

[1] Minn. St. 169.20, subd. 2, provides: "The driver of a vehicle within an intersection intending to turn to the left shall yield the right of way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard, but the driver, having so yielded and having given a signal when and as required by this chapter, may make such left turn, *and the drivers of all other vehicles approaching the intersection from the opposite direction shall yield the right of way to the vehicle making the left turn.*" (Italics supplied.)

it was 100 to 125 feet away from the intersection and despite this proceeded to make an oblique left turn from the intersection. Under those circumstances defendant was held negligent as a matter of law. In the instant case defendant testified that she did not see plaintiff's vehicle until just before the collision, and, furthermore, unlike Tschida she had stopped and looked before making the left turn. Clearly, under the circumstances, Mrs. Graham's actions were not negligent as a matter of law.

In Demmer v. Grunke, 230 Minn. 188, 193, 42 N. W. (2d) 1, 5, this court stated:

"* * * A statutory violation constituting prima facie evidence of negligence prevails as a controlling evidentiary factor against the violator only *so long as there is an absence of evidence tending to show a reasonable ground for such violation or only so long as there is no actual evidence to justify a reasonable assumption that such violation was not negligent under the circumstances* and would therefore not reasonably endanger himself or any other person entitled to the protection of the act." (Italics supplied.)

Even though the facts are disputed, the defendants herein are entitled and this court is required to "consider the evidence in the light most favorable to the prevailing party." Otter Tail Power Co. v. MacKichan, 270 Minn. 262, 133 N. W. (2d) 511.

The fact situation in the case at bar is not unlike that found in Dahl v. Collette, 206 Minn. 604, 289 N. W. 522, where the deceased plaintiff's observation was obstructed either by a dip in the road or by vehicles preceding the defendant and defendant's vehicle struck the plaintiff as he was negotiating a left turn. We held that contributory negligence of plaintiff could not be found as a matter of law. In Mattfeld v. Nester, 226 Minn. 106, 118, 32 N. W. (2d) 291, 301, 3 A. L. R. (2d) 909, this court, in following the Dahl case, said in discussing right-of-way when observation is obstructed:

"* * * The right-of-way rule is a relative one; whether it was violated depends on circumstances and usually is a fact question for the jury. * * *

"* * * Ordinarily, where the defendant is out of sight of the driver crossing an intersection, as where defendant *is behind an obstruction* or in a dip of the road and it appears to plaintiff as a result of observation that it is safe to cross and would be but for defendant's unanticipated speed or other negligence, the question whether plaintiff was guilty of contributory negligence is one of fact for the jury." (Italics supplied.)

Plaintiff argues that it is obvious from an examination of the plat, plaintiff's exhibit A and markings thereon, that defendant's vision was in no way obstructed to her right, thus discounting Mrs. Graham's statement that she saw no traffic coming from her right as she proceeded into the intersection. He cites Hermanson v. Switzer, 188 Minn. 455, 247 N. W. 581, as a controlling authority on that issue, stating that our court has frequently held that one who looks and does not see that which is in plain sight, and which ought to have been seen, is guilty of negligence as a matter of law.

The defendants, however, argue that because of the obstructions involved in the case at bar the "look-and-see-not-that-which-is-in-plain-sight" doctrine as contained in Hermanson v. Switzer, *supra,* and cited by appellant, is by hypothesis not applicable.

In Ranum v. Swenson, 220 Minn. 170, 19 N. W. (2d) 327, this court overruled the Hermanson case to the extent that the mere failure on the part of one who looks and does not see that which is in plain sight and which he might have seen does not in itself make him guilty of contributory negligence as a matter of law. The court there said (220 Minn. 174, 19 N. W. [2d] 330):

"* * * We expressly reject the policy of applying arbitrary standards of behavior amounting in effect to rules of law to all cases *without regard to surrounding circumstances.*" (Italics supplied.)

In the case of Moore v. Kujath, 225 Minn. 107, 115, 29 N. W. (2d) 883, 887, 175 A. L. R. 1007, this court, in considering the question whether defendant should have yielded the right-of-way to Moore if he saw him coming, held that he "should have done so as a matter of law *unless he was excused because of his testimony that, although the*

*Moore car was in plain sight, he did not see it until the moment of impact."* (Italics supplied.)

Martinson v. Scherbel, 268 Minn. 509, 129 N. W. (2d) 802, presents a situation where plaintiff, while driving a motorcycle parallel to an automobile driven by one Bird, entered an intersection on the green light on the right side of the Bird automobile, which when entering the intersection stopped abruptly because of a vehicle coming from the left through the intersection. Plaintiff being unable to stop as fast as the Bird automobile went in front of Bird and was struck by the crossing vehicle driven by defendant. This court said (268 Minn. 510, 129 N. W. [2d] 803):

"* * * It is conceded that plaintiff's view was obstructed by the Bird car, and had Bird remained at a standstill after the sign changed it would clearly have been a violation of the statute for plaintiff to proceed into the intersection without determining whether he could do so with safety."

As we read the Scherbel opinion, we reach the conclusion that the above-quoted portion of that opinion is in point with the fact situation the jury was entitled to find in the case at bar. Here the plaintiff's view was obstructed by the two vehicles standing stationary east of the intersection; the sign was green; and he obviously entered the intersection without first determining that he could do so with safety.

There is little if any compelling reason to upset the determination of the jury upon the record before us and especially where, as here, the instructions of the trial court were free from error and were not objected to by counsel. The trial court correctly instructed the jury that the intersection of Excelsior Boulevard and Wooddale Avenue traversed by the defendant driver was one intersection as defined by Minn. St. 169.01, subd. 36(b). Upon the record and under the circumstances it was entirely up to the jury to determine who was at fault and its determination must be affirmed.

Affirmed.